UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

LAWRENCE A. SHULTZ,           :
                              :
          Plaintiff           :    No. 4:10-CV-01154
                              :
     vs.                      :    (Complaint Filed 5/28/10)
                              :
MICHAEL J. ASTRUE,            :
COMMISSIONER OF SOCIAL        :    (Judge Muir)
SECURITY,                     :
                              :
          Defendant           :

**ORDER**

March 23, 2011

THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Lawrence A. Shultz's claim for social security disability insurance benefits.  For the reasons set forth below we will remand the case to the Commissioner for further proceedings.

Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes. The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured."  It is undisputed that Shultz meets the insured status requirements of the Social Security Act through March 31, 2012.  Tr. 9, 11 and 83.[1]

_____

1.  References to "Tr.___" are to pages of the administrative record filed by the Defendant as part of his Answer on August 9,

(continued...)

Shultz was born in the United States on June 22, 1958. Tr. 77-78.  Shultz graduated from high school in 1977 and can read, write, understand and speak English. Tr. 21, 90 and 97. After graduating from high school Shultz served in the United States Marine Corp from June 27, 1977, to November 25, 1981. Tr. 177. Records of the Social Security Administration reveal that Shultz had work and earnings in the following years:

| Year | Earnings |
|------|----------|
| 1975 | $    14.00 |
| 1976 |    771.65 |
| 1977 |   3355.30 |
| 1978 |   6656.56 |
| 1979 |   5365.08 |
| 1980 |   8153.07 |
| 1981 |   7491.42 |
| 1982 |    550.07 |
| 1983 |   3860.58 |
| 1984 |   4097.89 |
| 1985 |   3222.51 |
| 1986 |    696.80 |
| 1987 |   4398.55 |
| 1988 |   4550.25 |
| 1989 |  11088.98 |
| 1990 |  11515.73 |
| 1991 |   6512.95 |
| 1992 |   5760.00 |
| 1993 |   5760.00 |
| 1994 |   5710.00 |
| 1995 |   5760.00 |
| 1996 |   5760.00 |
| 1997 |   2750.00 |
| 1998 |  12173.08 |
| 1999 |  20963.80 |
| 2000 |  23663.67 |
| 2001 |    251.80 |
| 2002 |   5244.80 |
| 2003 |   6401.85 |
| 2004 |  20669.49 |

---

1.  (...continued)
2010.

2

```
        2005          22702.62
        2006          22664.82
        2007           1576.80
```

Tr. 84.  Shultz's total earning were $250,114.12.

Shultz has past relevant[2] medium, unskilled to semi-skilled work experience as a pizza delivery person for a restaurant, and as a forklift operator, order filler and receiving person at a warehouse. Tr. 37, 92 and 113.  Shultz claims that he became disabled on January 5, 2007, because of anxiety and knee and back problems. Tr. 21-22, 56 and 91.  Shultz contends that he has pain in his back, numbness in his right leg when standing and arm pain after retiring. Tr. 91.  He further alleges that he cannot lift more than 10 pounds and cannot bend forward because of back pain. Tr. 21-22.  Shultz has not worked since January 5, 2007. Tr. 21 and 91.  On September 5, 2008, Shultz filed an application for disability benefits with the United States Department of Veterans Affairs. Tr. 188.  The Department of Veterans Affairs on September 23, 2009,  awarded Shultz disability benefits based on a service connected injury to his back and left knee. Tr. 188-189.  His monthly entitlement amount starting December 1, 2008, was $243.00. Tr. 188.

---

2.  Past relevant work experience in the present case means work performed by Shultz during the 15 years prior to the date his claim for disability was adjudicated by the Commissioner. 20 C.F.R. §§ 404.1560 and 404.1565.

On January 8, 2007, Shultz filed protectively an application for social security disability benefits. Tr. 9, 55 and 77.[3]  On March 6, 2007, the Bureau of Disability Determination denied Shultz's application for disability insurance benefits. Tr. 56-59.[4]  On May 10, 2007, Shultz requested a hearing before an administrative law judge. Tr. 60. On October 7, 2008, seventeen months later, a hearing was held before an administrative law judge. Tr. 16-43.  On December 10, 2008, the administrative law judge issued a decision denying Shultz's application for disability insurance benefits. Tr. 9-15.  On February 3, 2009, Shultz filed a request for review of the decision with the Appeals Council of the Social Security Administration. Tr. 74-76.  On April 6, 2010, fourteen months later, the Appeals Council concluded that there was no basis upon which to grant Shultz's request for review. Tr. 1-3.  Thus, the administrative law judge's decision stood as the final decision of the Commissioner.

On May 28, 2010, Shultz filed a complaint in this court requesting that we reverse the decision of the Commissioner denying him social security disability insurance benefits.  On the

---

3.  Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits.  A protective filing date allows an individual to have an earlier application date than the date the application is actually signed.

4.  The Bureau of Disability Determination is an agency of the Commonwealth of Pennsylvania which initially evaluates applications for disability insurance benefits on behalf of the Social Security Administration.  Tr. 56.

same day the Clerk of Court assigned responsibility for this case to the undersigned for disposition.

The Commissioner filed an answer to the complaint and a copy of the administrative record on August 9, 2010.  Shultz filed his brief on October 4, 2010, and the Commissioner filed his brief on November 4, 2010.  The appeal[5] became ripe for disposition on November 22, 2010, when Shultz elected not to file a reply brief.

When considering a social security appeal, we have plenary review of all legal issues decided by the Commissioner. See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Commissioner of Social Sec. Admin.,  181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995).  However, our review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence."  Id.; Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). Factual findings which are supported by substantial evidence must be upheld. 42 U.S.C. §405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001)("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); Cotter

---

5.  Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal."  M.D.Pa. Local Rule 83.40.1.

v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence."); Keefe v. Shalala, 71 F.3d 1060, 1062 (2d Cir. 1995); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Martin v. Sullivan, 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. Brown, 845 F.2d at 1213. In an adequately developed factual record substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S.

474, 488 (1971).  A single piece of evidence is not substantial
evidence if the Commissioner ignores countervailing evidence or
fails to resolve a conflict created by the evidence.  Mason, 994
F.2d at 1064.  The Commissioner must indicate which evidence was
accepted, which evidence was rejected, and the reasons for
rejecting certain evidence.  Johnson, 529 F.3d at 203; Cotter, 642
F.2d at 706-707.  Therefore, a court reviewing the decision of the
Commissioner must scrutinize the record as a whole.  Smith v.
Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v.
Califano, 606 F.2d 403, 407 (3d Cir. 1979).

     To receive disability benefits, the plaintiff must
demonstrate an "inability to engage in any substantial gainful
activity by reason of any medically determinable physical or
mental impairment which can be expected to result in death or
which has lasted or can be expected to last for a continuous
period of not less than 12 months."  42 U.S.C. § 432(d)(1)(A).
Furthermore,

          [a]n individual shall be determined to be under a
          disability only if his physical or mental impairment
          or impairments are of such severity that he is not
          only unable to do his previous work but cannot,
          considering his age, education, and work experience,
          engage in any other kind of substantial gainful work
          which exists in the national economy, regardless of
          whether such work exists in the immediate area in which
          he lives, or whether a specific job vacancy exists for
          him, or whether he would be hired if he applied for
          work.  For purposes of the preceding sentence (with
          respect to any individual), "work which exists in the
          national economy" means work which exists in significant
          numbers either in the region where such individual
          lives or in several regions of the country.

7

42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step process in evaluating claims for disability insurance benefits.  <u>See</u> 20 C.F.R. §404.1520; <u>Poulos</u>, 474 F.3d at 91-92.  This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity,[6] (2) has an impairment that is severe or a combination of impairments that is severe,[7] (3) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment,[8] (4) has the residual functional capacity to return to his or her past work and (5) if not, whether he or she can perform other work in

---

6.  If the claimant is engaging in substantial gainful activity, the claimant is not disabled and the sequential evaluation proceeds no further. Substantial gainful activity is work that "involves doing significant and productive physical or mental duties" and "is done (or intended) for pay or profit."  20 C.F.R. § 404.1510.

7.   The determination of whether a claimant has any severe impairments, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. § 404.1520(c). If a claimant has no impairment or combination of impairments which significantly limits the claimant's physical or mental abilities to perform basic work activities, the claimant is "not disabled" and the evaluation process ends at step two.  <u>Id.</u>  If a claimant has any severe impairments, the evaluation process continues.  20 C.F.R. § 404.1520(d)-(g). Furthermore, all medically determinable impairments, severe and non-severe, are considered in the subsequent steps of the sequential evaluation process.  20 C.F.R. §§ 404. 1523 and 404.1545(a)(2).

8.  If the claimant has an impairment or combination of impairments that meets or equals a listed impairment, the claimant is disabled.  If the claimant does not have an impairment or combination of impairments that meets or equals a listed impairment, the sequential evaluation process proceeds to the next step.

the national economy. Id.  As part of step four the administrative law judge must determine the claimant's residual functional capacity. Id.[9]

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.  See Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996).  The residual functional capacity assessment must include a discussion of the individual's abilities.  Id; 20 C.F.R. § 404.1545; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

An individual's physical or exertional abilities include the ability to walk, stand, sit, lift, carry, push, pull, reach, climb, crawl, and handle. 20 C.F.R. § 416.945(b).  An individual's mental or non-exertional abilities include the ability to understand, carry out and remember simple instructions, and respond appropriately to supervision, coworkers and work pressures. 20 C.F.R. § 945(c).

The residual functional capacity assessment is a medical one and must be determined on the basis of medical evidence.  20 C.F.R. § 416.945(a).  If an administrative law judge makes a residual functional capacity assessment on the basis of his review

---

9.  If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

of the evidence, including the medical records, without the benefit of an expert opinion from a physician or psychologist the administrative law judge has improperly substituted his own lay medical opinion for that of a physician or psychologist. Rivera-Torres v. Secretary fo Health & Human Services, 837 F.2d 4, 6 (1st Cir. 1988).  In the absence of expert medical opinion, an administrative law judge cannot make a residual functional capacity assessment. Id.; see also Woodford v. Apfel, 93 F.Supp.2d 521, 529 (S.D.N.Y. 2000)("An ALJ commits legal error when he makes a residual functional capacity determination based on medical reports that do not specifically explain the scope of claimant's work-related capabilities."); Zorilla v. Chater, 915 F.Supp 662, 667 (S.D.N.Y. 1996)("The lay evaluation of an ALJ is not sufficient evidence of the claimant's work capacity; an explanation of the claimant's functional capacity from a doctor is required.").  The administrative law judge cannot speculate as to a claimant's residual functional capacity but must have a medical opinion supporting his determination. Id.[10]

        The administrative record in this case is 192 pages in length and we have thoroughly reviewed that record.  Our review of the administrative record reveals at least two legal and factual errors which require that this case be remanded. The failure of

---

10.  See also Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000)(an administrative law judge must ask the treating physicians for their opinions as to a claimant's residual functional capacity).

the administrative law judge to develop adequately the record is
the primary reason we are remanding this case.  See Shaw v.
Chater, *supra*.

At step one of the sequential evaluation process, the
administrative law judge found that Shultz has not engaged in
substantial gainful activity since January 5, 2007, the alleged
onset date. Tr. 11.

At step two of the sequential evaluation process, the
administrative law judge found that Shultz had the following
severe impairments: left knee degenerative joint disease/torn
meniscus, disorders of the back, and failed back syndrome. Tr. 11.
The administrative law judge found that Shultz's anxiety was a
non-severe impairment. Tr. 11.

An impairment is severe unless it is a "slight
abnormality" having "no more than a minimal effect on a person's
ability to work." Sincavage v. Barnhart, 171 Fed. Appx. 924, 926
(3d Cir. 2006); Newell v. Commissioner of Social Security, 347
F.3d 541, 546-557 (3d Cir. 2003). The determination of whether an
impairment is severe is a medical one. Id.

In finding that Shultz's anxiety was a non-severe
impairment, the administrative law judge erroneously stated that
Shultz received no treatment for his anxiety and that the "anxiety
does not cause more than minimal limitation in the claimant's

ability to perform basic mental work activities[.]". Tr. 11.  The
administrative record reveals that Shultz was diagnosed with
anxiety which was treated with the drug Xanax. No physician stated
that Shultz's anxiety had no more than a minimal impact on his
ability to work. It is hard to understand how the administrative
law judge found, in the absence of a medical opinion, that
Shultz's anxiety had no more than a minimal effect on his ability
to work.  The administrative law judge committed reversible error
at step two of the sequential evaluation process.

        At step three of the sequential evaluation process, the
administrative law judge found that Shultz's impairments did not
individually or in combination meet or equal a listed impairment.
Tr. 12.  This conclusion is defective in light of the error at
step two of the sequential evaluation process.

        At step four of the sequential evaluation process, the
administrative law judge committed a significant error.  At that
step the administrative law judge found that Shultz could not
perform his prior relevant work but that he had the residual
functional capacity to perform a limited range of light work.  In
so finding the administrative law judge did not point to a
physician's opinion of Shultz's exertional and non-exertional
abilities.  There is no timely and relevant physical residual
functional capacity assessment in the record from a physician

indicating that Shultz can engage in the exertional and non-exertional requirements of light work on a regular and sustained basis, i.e., 8-hours per day, five days per week or similar schedule. Without such an assessment by a physician, the administrative law judge's determination at step four of the sequential evaluation process is not supported by substantial evidence. Rivera-Torres v. Secretary of Health & Human Services, 837 F.2d at 6; Woodford v. Apfel, 93 F.Supp.2d at 529; Zorilla v. Chater, 915 F.Supp. at 667.

Because of the errors committed at steps 2 and 4 of the sequential evaluation process, the administrative law judge's conclusion at step 5 that Shultz can perform work as a parking lot attendant, packager and inspector is defective. It was error for the administrative law judge to rely on his lay analysis of the medical records. As one court has stated, "Judges including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor" because "lay intuitions about medical phenomena are often wrong." Schmidt v. Sullivan, 914 F.2d 117, 118 (7th Cir 1990).

Our review of the administrative record reveals that the decision of the Commissioner is not supported by substantial evidence. We will, therefore, pursuant to 42 U.S.C. § 405(g)

vacate the decision of the Commissioner and remand the case to the Commissioner for further proceedings.

NOW, THEREFORE, IT IS ORDERED THAT:

1.   The Clerk of Court shall enter judgment in favor of Lawrence A. Shultz and against Michael J. Astrue, Commissioner of Social Security, as set forth in the following paragraph.

2.   The decision of the Commissioner of Social Security denying Lawrence A. Shultz disability insurance benefits is vacated and the case remanded to the Commissioner of Social Security to:

2.1 Conduct a new administrative hearing;

2.2 obtain medical evidence from a physician regarding Shultz's physical and mental impairments, the severity of the impairments, and Shultz's exertional and non-exertional abilities; and

2.3 appropriately evaluate the medical and vocational evidence in accordance with the background of this order.

3.   The Clerk of Court shall close this case.


s/Malcolm Muir
MUIR
United States District Judge

MM:gs


14